# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 06-40057-JAR-01 |
| ) | |
| GERARDO GAXIOLA, JR., ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS

This matter is before the Court on Defendant's Motion to Suppress (Doc. 85). On April 24, 2013, the Court held a hearing and took the motion under advisement. The motion argued that officers who searched a recreational vehicle (RV) driven by Defendant exceeded the scope of his consent when they removed the lining of a cooler in the RV. Having reviewed the evidence and arguments presented by the parties, the Court is now prepared to rule. The Court will not suppress the evidence discovered by the officers.

On November 12, 2005, approximately three miles west of Topeka on I-70, Deputy Tracy Trammel of the Shawnee County Sherriff's Office stopped an RV, driven by Mr. Gaxiola, for failure to maintain a single lane of travel. Three adult passengers and a baby were in the RV, including Julian Rocha, who had rented the RV. After the stop was complete and all documentation requested by Deputy Trammel returned, Deputy Trammel asked Defendant if he would answer a few additional questions. Defendant agreed. After some questioning, Deputy Trammel became suspicious that Defendant and the other occupants might be engaged in some

kind of criminal activity, based on his view that the RV rental arrangement seemed odd, the reason for renting RV was not believable, the adults' stories were inconsistent, the individuals involved were very nervous, and they all discussed differing travel plans. Deputy Trammel also noted that Defendant had a criminal narcotics history. Deputy Trammel radioed for backup and then requested permission from all three adults to search the RV, which all three gave. Officer Mitch Johnson and Officer Brian Rhodd arrived to assist, and Officer Johnson supervised the Defendant and the others in the RV during the search, while Officer Rhodd assisted in the search itself. Although the parties disagree about the nature of Defendant's detention during the search, they all agree that Defendant and the other occupants were in the back of a patrol vehicle and were unable to view the search of the RV. Defendant does not argue that he was unable to communicate with Officer Johnson during the search, and the Court finds that Defendant could have objected to the search at any time but did not do so.

Officer Rhodd testified that, as he searched the RV, he noticed what appeared to be a brand new cooler between the driver's seat and the front passenger seat in the RV. He knew by his training that coolers could be used to smuggle drugs by placing the drugs inside the lining of the cooler, and he stated that new coolers were often used for such activities. Officer Rhodd testified that, on further inspection, he noticed glue in one location on the lip of the cooler, where the liner meets the shell of the cooler, and then noticed that the liner was warped in the same location, as if someone had pried on it. Officer Rhodd noted that the appearance of the pried lip and the glue was materially different than a new cooler, based on the tampering marks. This suggested to Officer Rhodd that the cooler was being used for smuggling, and so he used his pocket knife and pried the liner away from the shell. He testified that he did so carefully and that

the liner pulled away easily. Officer Rhodd testified that, after he pried the liner a small distance from the shell, he could see that the insulation in the cooler had been modified to create small voids, which were filled with what appeared to be black plastic packages. Officer Rhodd testified that, based on his experience and training, he believed these packages to contain drugs, and so he took apart the cooler, removing the ice spout, then the liner. During the suppression hearing, Officer Rhodd testified as to his training and experience in drug interdiction, and the Court is satisfied that he has significant expertise in detecting drug smuggling efforts. The Court has evaluated Officer Rhodd's testimony and finds it credible. The packages lodged in the cooler insulation contained 8,744 grams of cocaine.

All three of the RV occupants were arrested and transported to the Shawnee County Jail, where they were interrogated before eventually being released without having been charged. An indictment was returned on April 19, 2006, charging Defendant and Julian Rocha with (1) conspiracy to possess with intent to distribute 5 kilograms or more of a mixture or substance containing a detectable amount of cocaine in violation of 21 U.S.C. § 86, and (2) possession with intent to distribute 5 kilograms or more of a mixture or substance containing a detectable amount of cocaine in violation of 21 U.S.C. § 841(a)(1). Both Defendant and Rocha were out of the country at the time the indictment was filed. Rocha returned to the United States and was arraigned on March 4, 2008. As part of his defense, he challenged the stop and seizure of cocaine and information taken from cell phones located in the search of the RV. The Court denied his motions to suppress.

Defendant returned to the United States in October 2012 and was arrested and transferred to this District to be arraigned. Defendant acknowledges that the legality of the initial traffic

stop leading to the charges in this case was already heard and decided by Judge Rogers; Defendant does not challenge the legality of the stop itself. Instead, he presents this narrow challenge: Whether the officers exceeded the scope of consent when they took apart the ice chest in Defendant's rented RV, discovering bundles of cocaine. The Government initially argued that Defendant lacked standing to contest the search of the cooler but abandoned that issue during oral argument. The Government also argued that this issue was decided as part of Rocha's challenge, but it does not appear that this issue was raised in that proceeding, and, regardless, the issue is moot given the Court's broader determination on this motion.

Defendant moves to suppress on the narrow ground that the search of the ice chest rendered it destroyed and completely useless, and thus exceeded the scope of consent to search the RV. The government responds that the search did not exceed the scope of consent, and, even if Defendant has standing and the search exceeded the scope of consent, the exclusionary rule does not apply under *United States v. Leon*.[1]

"When law enforcement officers rely upon consent as the basis for a warrantless search, the scope of the consent determines the permissible scope of the search."[2] "The scope of consent is measured by objective reasonableness: what would the typical reasonable person have understood by the exchange between the officer and the suspect?"[3] In *Osage*, the Tenth Circuit addressed the question of what the typical reasonable person would understand concerning destructive searches where the search involved, in part, the destruction of some of the person's

---

[1] 468 U.S. 897, 907 (1984).

[2] *United States v. Osage*, 235 F.3d 518, 520 (10th Cir. 2000) (citing *Florida v. Jimeno*, 500 U.S. 248, 251-52 (1991)).

[3] *Id.* (citing *Jimeno*, 500 U.S. at 251-52) (internal quotations removed).

property. *Osage* involved a police encounter on an Amtrak train. The officer asked the defendant for permission to search a locked suitcase, to which the defendant responded, "yeah, I guess." Inside the bag, the officer found several cans labeled "tamales in gravy"; the officer noticed that the labels appeared to have been tampered with and did not feel or sound like they contained tamales in liquid. They felt and sounded like containers of salt. The officer opened one of the cans with a Leatherman tool and discovered plastic bags containing methamphetamine. The Tenth Circuit was called upon to decide whether the defendant's consent to search the suitcase included consent to open the can inside of the suitcase. The court held: "before an officer may actually destroy or render completely useless a container which would otherwise be within the scope of a permissive search, the officer must obtain explicit authorization, or have some other, lawful, basis upon which to proceed."[4] The court noted that this was not inconsistent with earlier Tenth Circuit decisions that permitted some dismantling of an item searched, including removal of screws or the lifting of carpets in a car trunk.[5]

Here, Defendant argues that, because the officers pried apart the inner lining from the outside of the cooler, they "destroyed" and "rendered completely useless" the cooler, which required additional authorization from the RV's occupants. The Government argues that the cooler was not destroyed or rendered completely useless and that the officers had probable cause to search the cooler because they immediately suspected it contained a hidden compartment.

Defendant's consent extended to allow Officer Rhodd to pry the edge of the lining from the shell of the cooler. Prying the lining slightly ajar from the shell did not destroy the cooler or

---

[4]*Id.* at 522.

[5]*Id.* at 521 n.2.

render the cooler completely useless. Indeed, the Court has examined the cooler, and even though the lining has not been reglued onto the shell, the lining fits tightly to the shell. Had Officer Rhodd found nothing, the lining would not even have needed to be reglued before the cooler could be used as it was intended. Officer Rhodd testified that, when he pried the cooler lining from the shell, he could see the hidden compartments and what appeared to be drugs wrapped in plastic. The apparent existence of a hidden compartment likely to contain contraband is sufficient to provide probable cause.[6] When Officer Rhodd saw the packages and the hidden compartments, he had probable cause to proceed with taking the liner entirely out of the cooler, regardless of whether or not that destroyed the cooler and rendered it completely useless. This portion of the search need not have been authorized, as he had "some other, lawful, basis upon which to proceed."[7] Thus, the Court holds that the search was lawful, and the Court does not reach the question of whether removing the liner entirely amounted to destroying the cooler and rendering it completely useless.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion to Suppress (Doc. 85) is DENIED.

IT IS SO ORDERED.

Dated: <u>April 29, 2013</u>

 S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE

---

[6]*United States v. Stephenson*, 452 F.3d 1173, 1178 (10th Cir. 2006).

[7]*Osage*, 235 F.3d at 522.